## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | |
|---|---|
| LAJUAN SUMPTER, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| REOSHA BUTLER AND JEFFERSON DUNN, | |
| Defendants. | |

## PLAINTIFF'S COMPLAINT FOR DAMAGES

## INTRODUCTION

Plaintiff Lajuan Sumpter now brings this complaint against Defendants Reosha Butler, Officer Nickols, and Jefferson Dunn, and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action to obtain full and complete relief and to redress the unlawful practices described herein.

2.

This action seeks, inter alia, declaratory and equitable relief, along with monetary damages, attorneys' fees, and costs.

1

## JURISDICTION AND VENUE

### 3.

This action arises under the United States Constitution's Eighth and Fourteenth Amendments' prohibition against Cruel and Unusual Punishment and the Fourteenth Amendment for procedural due process and is brought pursuant to 42 U.S.C. §1983.

### 4.

This Court has subject matter jurisdiction over this action under 29 U.S.C. §§ 1331 and 1343, as well as any claims seeking declaratory, injunctive and monetary relief pursuant to 28 U.S.C. §§2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure. This Court has authority to award costs and attorneys' fees under 42 U.S.C. §1988.

### 5.

Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and (b)(2). A substantial part of the events and omissions giving rise to the claim in this action occurred in this district.

### 6.

Sumpter has exhausted his administrative grievances under the PLRA.

## PARTIES

7.

Plaintiff is a male citizen of the United States of America and is subject to the jurisdiction of this Court. He is an inmate currently incarcerated at Fountain Correctional Facility in Atmore, Alabama.

8.

Defendant Reosha Butler is the Warden of Fountain Correctional Facility. At all times relevant to the events at issue in this case, Defendant Butler was serving in the capacity of Warden; as such, she was acting under the color of law.

9.

Defendant Jefferson Dunn is the Commissioner of the Alabama Department of Corrections. At all times relevant to the events at issue in this case, Defendant Dunn was serving in the capacity of Commissioner and, as such, he was acting under the color of law.

10.

Defendant Officer Nickols is a Corrections Officer at Fountain Correctional Facility. At all times relevant to the events at issue in this case, Defendant Nickols was serving in the capacity of CO and, as such, he was acting under the color of law.

## FACTUAL ALLEGATIONS

### I.    *Conditions in Alabama's prisons*

11.

The dangerous conditions in Alabama's prisons are well known to Butler and Dunn.

12.

On April 19, 2019, The Department of Justice issued a report of its investigation into the conditions in Alabama's Prisons.

13.

The report indicated that the Department of Justice believed that there was reasonable cause to believe that the conditions in Fountain violated the United States Constitution.

14.

That report found that Fountain Correctional Facility was staffed at only 26% of the level necessary authorized for the facility.

15.

In July 2021, the Alabama Department of Corrections reported that Fountain Correctional Facility housed 1181 men which was 142% of the facility's intended capacity.

16.

In July 2021, Fountain Correctional Facility had 12 prisoner assaults and had experienced 119 documented assaults year to date.

17.

As such, presuming that each inmate was assaulted only one time each year, 10% of the population of the facility had experienced an assault in the first seven months of the year.

18.

The Department of Justice's report also noted that the Alabama Department of Corrections misclassified deaths as natural causes that were potentially unnatural deaths, thereby underreporting the extent of the violence in the prison.

19.

The report also noted that the Alabama Department of Corrections often failed to protect inmates from violence even when they were previously warned of threats to the inmate's safety.

20.

The Department of Justice's report also noted that "[d]angerous and illegal drugs are highly prevalent in Alabama's prisons, and ADOC appears unable or unwilling to prevent the introduction and presence of drugs in its prisons."

21.

The Department of Justice Report noted that staff were not being adequately screened for drugs and were introducing illegal substances into the Alabama prison system.

22.

Despite being apprised of these conditions, Defendants Dunn and Butler took no actions to remedy the conditions in Fountain.

23.

Each Defendant had personal and particular knowledge of the dangers to Sumpter.

24.

Defendant Reosha Butler was aware that there were gangs present at Fountain.

25.

Defendant Butler was aware that the Crips, Bloods, and Disciples were present at Fountain.

26.

Defendant Butler stated that there were positive parts to gangs operating in a prison, and that gangs could "mentor in a positive way."

27.

Defendant Butler was aware that gangs brought the risk of contraband into the prison.

28.

Defendant Butler was aware that contraband, including drugs and cellphones, were present throughout the prison.

29.

At all times relevant to the complaint, prison officials at Fountain regularly found contraband, such as drugs and cellphones, during searches of Fountain.

30.

Defendant Butler has postulated that "ninjas" and "potato cannons" are the source of the drugs in the facility.

31.

Defendant Butler admitted that staff could be responsible for bringing drugs and contraband into Fountain.

32.

Fountain officials maintain an "incident module system" in which attacks on inmates are reported and prisoner concerns for their safety are logged. As warden, Butler received notification of every incident of inmate violence or death.

33.

As such, Defendant Butler received notice of each event of violence against Sumpter.

34.

The only actions Defendant Butler took in order to prevent violence at Fountain were "walking around," and "talking to inmates."

35.

Defendant Butler did not implement any programs at Fountain to decrease violence.

36.

Defendant Butler did not change any policies or procedures at Fountain to decrease violence.

37.

Defendant Butler was aware that the DOJ determined that the conditions at facilities in the Alabama Department of Corrections ("ADOC") were unsafe for inmates.

38.

Defendant Dunn was aware that the DOJ determined that the conditions at facilities in the ADOC were unsafe for inmates.

39.

Defendant Dunn did not implement any policy changes in the ADOC to address the violence and unsafe conditions.

40.

Defendant Dunn was aware that prisons in the ADOC were understaffed and overcrowded.

41.

Defendant Dunn did not implement any policy changes in the ADOC to address the understaffing and overcrowding at the ADOC.

42.

On or about June of 2022, Plaintiff was stabbed in his stomach and back while in the custody of Fountain Correctional Facility.

43.

Plaintiff learned that one of Fountain's officers had brought cellphones into the facility.

44.

Plaintiff learned that the officer thought that he, Plaintiff, was "onto" them, and was targeting him for violence as a result.

45.

Plaintiff and his family members complained to prison officials, including Defendant Butler that he did not feel safe and he wanted to be moved.

46.

Fountain prison officials told Plaintiff that he could not be moved because of a lack of beds.

47.

On July 13, 2022, Plaintiff was sitting in his dorm when the guards called for lunch.

48.

Officer Nickols was assigned to the dormitory at the time.

49.

Plaintiff went to go eat and returned shortly thereafter.

50.

When Plaintiff was returning to his bed, he was suddenly struck by something that knocked him unconscious.

51.

Though Nickols was assigned to watch the dorm, he took no action when Plaintiff was attacked.

52.

Plaintiff woke up being shaken by someone stating, "Lajuan, get up."

53.

Plaintiff woke up and stated, "Who did this to me?"

54.

As he stated this, Plaintiff realized that blood was coming from his mouth.

55.

Plaintiff was escorted to his bed and an inmate asked if Plaintiff wanted someone to call for a CO named MacDole.

56.

Plaintiff said yes.

## 57.

The inmate brought MacDole, Lt. Ziegler, and a kitchen officer to see Plaintiff.

## 58.

Plaintiff was brought to the infirmary.

## 59.

In the infirmary, the nurse on duty stated upon seeing Plaintiff, "He's got to go to the hospital."

## 60.

Plaintiff recalls being asked what happened. He replied, "Someone blind-sided me. I don't know who."

## 61.

Plaintiff pointed out that he was near the surveillance cameras when he was struck, so the incident would have been captured on tape.

## 62.

Plaintiff was taken to Atmore Hospital, where he received stitches in his right ear, and was diagnosed with a concussion, four broken ribs, and two fractures on the right side of his jaw.

## 63.

Plaintiff was taken to the University of Alabama at Birmingham (UAB) hospital, where he was also diagnosed with a fracture of his right nasal bone.

64.

After Plaintiff returned to Fountain, he continued to have difficulty chewing, and his teeth had been rearranged by the assault, and pain.

65.

Plaintiff had a follow up appointment at UAB on August 2, 2022, where a CT of his face showed that one of the jaw fractures he had sustained extended through his tooth socket, and that the trauma to his face had caused a sinus mucous retention cyst in his right maxillary sinus.

66.

Plaintiff was advised that he should not chew any food for the new month, and was given a medicated mouth wash, antibiotics, hydrocodone-acetaminophen, and ibuprofen. He was scheduled to return to UAB on August 8, 2022, for facial surgery.

67.

On August 8, 2022, Plaintiff had facial surgery at UAB. He received open treatment of his jaw fractures, and eight of his teeth were removed.

68.

Plaintiff learned later that the individuals whom prison officials identified as his attackers were transferred out of Fountain.

69.

Plaintiff learned that the individuals whom prison officials identified as his attackers were never charged.

70.

Plaintiff continued to suffer pain after the surgery on August 8, 2022.

71.

Plaintiff was told by prison officials that the incident during which he was assaulted occurred in a surveillance camera "blind spot."

72.

However, the assault upon Plaintiff occurred right next to and in plain view of the surveillance cameras.

73.

Although Defendants were aware of prior assaults and threats to Plaintiff's safety, they did nothing to prevent violence against him.

74.

As a result of the assault, Plaintiff is missing eight teeth, has had facial surgery and suffered severe physical pain, emotional distress and trauma.

## **CLAIMS FOR RELIEF**

## **COUNT I: VIOLATIONS OF PLAINTIFF'S FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER 42 U.S.C. §1983**

75.

Plaintiff re-alleges paragraphs 1-74 as if set forth fully herein.

76.

Through the acts and omissions alleged in this Complaint, Defendants have subjected Sumpter to a pattern or practice of conditions of confinement that deprived him of the rights, privileges, and immunities secured and protected by the Eighth and Fourteenth Amendments to the Constitution of the United States, causing him grievous harm.

77.

Through the acts and omissions alleged in this Complaint, Defendants have exhibited deliberate indifference to the health and safety of Sumpter, in violation of the rights, privileged, and immunities of Sumpter as secured or protected by the Eighth and Fourteenth Amendments to the Constitution of the United States.

78.

Defendants acted under the color of state or local law.

79.

Each defendant stood by idly, failing to take reasonable available steps to avoid the likelihood of great harm, even though they knew or should have known their inaction could result in serious bodily injury to Sumpter.

80.

Defendants thus caused Sumpter to suffer substantial harm, including, but not limited to, physical pain, mental and emotional distress.

81.

Defendants' ongoing failure to take any steps to ensure Sumpter safety constituted a continuing violation of Sumpter Fourth Amendment rights, as incorporated against the states by the Fourteenth Amendment.

## <u>COUNT II: FAILURE TO PROTECT UNDER THE EIGHTH AMENDMENT, 42 U.S.C. §1983</u>

82.

Plaintiff re-alleges paragraphs 1-74 as if set forth fully herein.

83.

Defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm to Plaintiff existed; namely, that he would continue to be grievously harmed by inmates or COs at Fountain.

84.

Each Defendant drew such an inference.

15

85.

Defendants exhibited a conscious and callous indifference to that risk. Not a single Defendant acted to protect Plaintiff from the dangers to which he repeatedly alerted them.

86.

Each defendant stood by idly, failing to take reasonable available steps to avoid the likelihood of great harm, even though they knew or should have known their inaction could result in serious bodily injury to Sumpter.

87.

Defendants thus caused Sumpter to suffer substantial harm, including, but not limited to physical pain and mental and emotional distress.

88.

Defendants' ongoing failure to take any steps to ensure Sumpter's safety constituted a continuing violation of Sumpter's Fourth Amendment rights, as incorporated against the states by the Fourteenth Amendment.

## COUNT III: STATE-CREATED DANGER UNDER THE FOURTEENTH AMENDMENT 42 U.S.C. §1983

89.

Plaintiff re-alleges paragraphs 1-74 as if set forth fully herein.

90.

Through the acts alleged in this Complaint, Defendants committed affirmative acts which placed Plaintiff in the position of actual, particularized danger by creating and exposing Plaintiff to a danger that he would not otherwise have faced.

91.

The Defendants acted with deliberate indifference to the known and obvious danger.

92.

The affirmative acts of each Defendant created the actual, particularized danger, causing injury to the Plaintiff that was foreseeable.

93.

Defendants acted under color of state law.

94.

Defendants' ongoing failure to take any steps to protect Plaintiff from the state-created danger constituted a violation of his rights under the Fourteenth Amendment.

## COUNT IV: SUPERVISORY LIABILITY (42 U.S.C. § 1983) FAILURE TO SUPERVISE
*(Against Defendant Butler)*

95.

Plaintiff re-alleges paragraphs 1-74 as if set forth fully herein.

17

96.

Defendant Butler was the Warden of Fountain who was responsible for managing the work of lower-ranked officers and staff at Fountain.

97.

Butler had a custom or practice of allowing gangs to "run" each dormitory, purportedly in exchange for the gangs keeping violence levels down.

98.

A history of widespread abuse by Correctional Officers and gang members at Fountain put Butler on notice of a substantial risk of serious harm to Sumpter and the need to correct the deprivation of rights to Fountain inmates.

99.

The July 14, 2022 attack upon Sumpter, of which Butler received notice, put Butler on notice of the harm to Sumpter.

100.

Butler knew that the COs and inmates at Fountain would place Sumpter in harm's way and failed to stop them from doing so.

101.

In doing so, Butler allowed each and every agent of Fountain to violate the constitutional rights of the inmates of Fountain, including Sumpter.

102.

Butler's policy and practice, knowledge of the danger to Sumpter, and complete failure to act to protect Sumpter, was a proximate cause of Sumpter injuries.

## COUNT V: NEGLIGENCE
### *(Against Defendant Butler)*

103.

Plaintiff re-alleges paragraphs 1-74 as if set forth fully herein.

104.

Defendant Butler was the Warden of Fountain who had a duty to protect Plaintiff from serious harm under the Constitution.

105.

By virtue of Butler's failure to prevent serious harm to Plaintiff, Defendant failed to use ordinary care, causing Plaintiff to be severely harmed.

106.

The actions of Butler were consciously or recklessly indifferent to the inevitable or probable consequences of its conduct in failing to remedy the severe harm to Plaintiff.

107.

Defendant Butler is thus liable to Plaintiff for damages as a result.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a)      Grant Plaintiff a trial by jury as to all triable issues of fact;

(b)      Grant declaratory judgment declaring that Plaintiff's rights have been violated;

(c)      Grant Plaintiff leave to add additional state law claims if necessary;

(d)      Compensatory damages, including damages for mental and emotional suffering caused by Defendants' misconduct;

(e)      Punitive damages based on Defendants' willful, malicious, intentional and deliberate acts, including ratification, condonation and approval of said acts;

(f)      Award the Plaintiff punitive damages against each Defendant;

(g)      Award Plaintiff interest to commence from injury;

(h)      Grant other such relief as law and equity allows, including costs and reasonable attorney's fees under 42 U.S.C. § 1988.

(i)      All other relief to which he may be entitled.

Respectfully submitted, this 20th day of September 2023.

**BARRETT & FARAHANY**

s/ Kira Fonteneau
Kira Fonteneau
*Counsel for Plaintiff Lajuan Sumpter*

OF COUNSEL:
**Barrett & Farahany**
2 North 20th St, Suite 900
Birmingham, AL 35203
kira@justiceatwork.com
fonteneau@justiceatwork.com
T. 205.564.9005